**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| Plaintiff, | : | Case No. 2:18-CR-230 |
| vs. | : | **CHIEF JUDGE SARGUS** |
| | : | |
| **GRANT D. MICHALSKI,** | : | |
| Defendant. | : | |

**DEFENDANT GRANT D. MICHALSKI'S
SENTENCING MEMORANDUM**

**I.   INTRODUCTION.**

On January 24, 2019, the United States Probation Office disclosed the final Presentence Investigation Report (hereinafter "PSR") that was prepared in the above-captioned case.  Under the existing rubric, sentences can only be imposed after moving through the following three-step process:  (1) properly compute the applicable sentencing guideline range; (2) determine the propriety of a departure from that range; and (3) apply the relevant § 3553(a) factors.  USSG §§ 1B1.1(a)-(c).  Adherence to this procedure yields a sentence that is "sufficient, but not greater than necessary" to satisfy Congress' sentencing mandate codified in 18 U.S.C. § 3553(a)(2).

**II.   SENTENCING GUIDELINES.**

The proposed guideline applications in Michalski's PSR recommend a sentence of 235-240 months imprisonment based on a total offense level 37 and criminal history category II. (PSR, ¶102).  However, Michalski objected to Officer Pennington's guideline computation and maintains the range should be 108-135 months, predicated on a base offense level 30 and criminal history category II.  These objections are pending and must be resolved on Michalski's sentencing date.

1

Finally, the parties entered into a plea agreement, pursuant to Fed. R. Crim. P. 11(c)(1)(C), stipulating that a sentence within the range of 90 and 132 months satisfies Congress' sentencing mandate engrafted in 18 U.S.C. §3553(a)(2). (PSR, ¶5).

**III.    DEPARTURES.**

Officer Pennington notes that a basis for upward departure is present as there are "numerous pornographic videos" present on Michalski's computer that had a duration of between "29 seconds and 30 minutes in length." (PSR, ¶116). Michalski concedes there were several videos with this run time but submits they were not that prevalent on his computer's hard drive to justify an upward departure under USSG § 2G2.2, comment. (n. 4(B)(ii)).

On November 20, 2018, for more than two hours, Michalski met with investigators, as well as AUSA Hill, and truthfully revealed not only his involvement in this offense but also that of other individuals involved in child exploitation offenses. Because the parties entered into a Rule 11(C)(1)(c) plea agreement with a stipulated sentencing range, AUSA Hill will not be filing a motion for substantial assistance. However, this assistance is an appropriate sentencing consideration under § 3553(a). *United States v. Blue*, 557 F.3d 682, 686-87 (6th Cir. 2009).

**IV.    SENTENCING FACTORS---18 U.S.C. §3553(a).**

The final step of the sentencing analysis requires this Court to determine what sentence is sufficient, but not greater than necessary, to satisfy Congress' sentencing mandate. Michalski points to the following three § 3553(a) factors to answer this question: (1) the nature and circumstances of his offense; (2) his history and characteristics; and (3) the need for the sentence to protect the public. In the end, Michalski submits that a 90 month prison sentence, along with 60 months of supervised release, vindicate Congress' sentencing mandate as this sentence would not diminish the seriousness of his offense, would provide just punishment, and protect the public.

A. **NATURE AND CIRCUMSTANCES OF THE OFFENSE—§ 3553(a)(1).**

There is no way to describe this offense other than "serious" as it is unassailable that "child pornography harms and debases the most defenseless of our citizens." *United States v. Williams*, 553 U.S. 285, 307 (2008).  Consequently, it is not surprising that child pornography offenses are one of the fastest growing areas of prosecution by the Department of Justice with investigators policing the internet to catch people who are under the false impression that their habit is personal, harmless, and anonymous.

The Sentencing Commission's most recent study published on January 2, 2019 supports this bold statement.  In fiscal year 2010, child exploitation offenses made up 3.2% of the district courts' dockets whereas six fiscal years later, these offenses make up 4.2% of the docket. *Mandatory Minimum Penalties for Federal Sex Offenses*, https://www.ussc.gov/research/research-reports/mandatory-minimum-penalties-federal-sex-offenses p.4.  (Last visited on January 9, 2019).  Additionally, the percentage of child pornography offenders convicted of an offense carrying a mandatory minimum penalty, like Michalski, increased from 50.2% in fiscal year 2010 to 59.6% in fiscal year 2016.  *Id*.  Finally, as of September 30, 2016, 5.2% of the federal prison population (8,508 inmates) were serving sentences for child pornography offenses, this is a 675% increase in the inmate population in twelve fiscal years.  *Id*. at 52.

B. **MICHALSKI'S HISTORY AND CHARACTERISTICS -- §3553(a)(1).**

   **(1) Childhood and Nuclear Family.**

In 1989, Grant Michalski was born in Toledo, the only child of Daniel and Brenda Michalski. (PSR, ¶65).  Grant's formative years were spent in the Toledo/Waterville area and he was the center of his parents' attention.  (PSR, ¶66).  Both parents were gainfully employed, were engaged in Grant's positive development, and were unselfish providers.  (PSR, ¶66).  There was

never a hint of any form of abuse in the home and Grant's world, in turn, revolved around his parents as well as his fraternal grandfather, who retired from the FBI after decades of loyal service after which he practiced law in Northwest Ohio.

Brenda and Dan Michalski used the following adjectives to describe their son: fun-loving, caring, sweet, curious, smart, as well as a natural leader. (PSR, ¶74). As he matured, Grant didn't present any behavioral problems to his parents and he was focused on excelling in school, with aspirations of majoring in aeronautical engineering. (PSR, ¶74). Eventually, Grant became a computer scientist. (PSR, ¶74).

As an only child, Grant accompanied his parents virtually everywhere they went. (PSR, ¶75). Consequently, he matured much quicker than his classmates and probably related better to adults than his peers.

Until his arrest, Grant's parents were unaware of the extent that sex addiction played in his life. Not surprisingly, Brenda and Dan Michalski do not condone their son's behavior and have difficulty understanding his interest in receiving and possessing child pornography. However, they are a tight-knit family and Grant's parents will continue to support him once he's released from the BOP, making his transition from prisoner to productive member of society as smooth as possible.

### (2) Education and Vocational Skills.

As noted, academic achievement was a priority in Grant's life as he grew up. In 2008, Grant graduated in the top 1% of his high school class achieving a grade point average of 4.442. (PSR, ¶97). While in high school, Grant exhibited a wide variety of interests including: being a musician; being part of his school's academic quiz bowl squad; being a member of student government council; as well as learning a foreign language. (PSR, ¶97).

After high school, Grant attended both The Ohio State University as well as the University of Toledo and he majored in computer science at both institutions. (PSR, ¶97). In the spring semester of 2014, Grant was one class away from being awarded his bachelor's degree in computer science at Ohio State when he withdrew from the university after being offered his dream job by Nationwide Insurance Company. (PSR, ¶97).

### (3) Employment.

Grant Michalski has always been industrious. While in college, Grant worked at Staples in both Columbus as well as Bowling Green. (PSR, ¶99). As noted, in 2014, Grant secured employment at Nationwide as an IT Analyst Specialist, where he worked until the day he self-surrendered on the federal arrest warrant issued in this case. (PSR, ¶98).

### (4) Substance Abuse.

Like many, Grant Michalski's introduction to substance abuse began in college. It began innocently enough as a recreational user of both marijuana and alcohol. (PSR, ¶¶90-91). However, his use increased over time and Grant eventually became a weekly marijuana user and a "functional alcoholic." (PSR, ¶¶90-91). These vices served as a gateway to a full array of illicit substances that Grant used as an adult: cocaine, crack, Percocet, ecstasy, and methamphetamine. (PSR, ¶¶92-95).

In the fog of the drug abuse that is chronicled in Michalski's PSR, it's remarkable that he continued climbing the corporate ladder at Nationwide. However, it's apparent that Michalski would benefit from participation in RDAP while he's serving this Court's sentence. (PSR, ¶96).

### C. THE SENTENCING RANGE ESTABLISHED BY THE SENTENCING GUIDELINES--§3553(a)(4).

Grant Michalski's sentencing range is either 235-240 or 108-135 months, depending on the resolution of his guideline objections. (PSR, ¶103). As noted, the parties entered into a

5

stipulated sentencing range wherein they agreed that a sentence within the 90-132 month range would be sufficient, but not greater than necessary to satisfy Congress' sentencing mandate.

Grant Michalski's PSR uses USSG § 2G2.2 to compute his offense level and results in a total offense level of 37.  To compute this level, the parties agree the following specific offense characteristics applied to elevate his base offense level of 22:  (1) two-levels for material involving a prepubescent minor; (2) four-levels for images depicting sadistic or masochistic conduct; (3) two-levels for using a computer to commit the offense; and (4) five-levels for possessing more than 600 images.  However, in his objections, Michalski contends the engaging in a pattern of activity enhancement is inappropriate and because he never distributed child pornography, his offense level should be reduced two-levels, under § 2G2.2(b)(1).  In sum, Michalski contends his adjusted offense level should be 33 and after being credited for acceptance of responsibility, his total offense level should be 30.

In December 2012, the Sentencing Commission released a report on the child pornography guidelines for non-production offenders, like Grant Michalski.  *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012) ["*Child Porn Report*"].  The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences, pursuant to its statutory duty to "consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *id.* at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id.* at ii; *id.* at 323.

The Commission explained that because the enhancements for computer use and type and volume of images "now apply to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability." *Id.* at iii, xi; *Id.* at 209, 323. It explained that "technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre of child pornography that previously was not widely circulated." *Id.* at 6.

Because "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders," *id.* at xi, the "current guideline does not adequately distinguish among offenders regarding their culpability for their collecting behaviors," *Id.* at 323. The cumulative enhancements addressing the content and volume of images possessed, "in addition to base offense levels of eighteen or twenty-two, results in guideline ranges that are overly severe for some offenders in view of the nature of their collecting behavior." *Id.*

The Commission reported that "not all child pornography offenders are pedophiles or engage in other sex offending." *Id.* at 104. It reported that approximately one in three offenders sentenced under § 2G2.2 "have engaged in" what the Commission deems "sexually dangerous behavior," criminal or non-criminal, past or present, based on allegations in PSRs, arrests, and convictions. *Id.* at ix-x, 204-05. However, "the current guideline measures for offender culpability (*e.g.*, for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of criminal sexually dangerous behavior." *Id.* at 204.

The Commission concluded that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting

7

behavior and insufficient emphasis on offenders' community involvement and sexual dangerousness." *Id.* at xx; *see also id.* at 321. The Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines." *Id.* at xviii, 322.

The Commission recommended that the specific offense characteristics related to the types and volume of images, distribution and use of a computer "be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability (*e.g.*, the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)," and "to reflect offenders' use of modern computer and Internet technologies." *Id.* at xviii-xix, 322-33. Other potential amendments would modify the enhancement for pattern of activity or possibly account for offenders involved in child pornography "communities." *Id.* at 323-24.

However, Congress largely ignored the Commission's recommendations. Until the Sentencing Commission's report was disclosed, there was a raft of legal decisions discussing how these "enhancements," that drive the §2G2.2 guidelines, were not truly "enhancements" because of their omnipresence in the heartland case. These issues are eloquently summarized in *United States v. Jenkins*, 854 F.3d 181, 188-89 (2d Cir. 2017).

It is noteworthy that there are guideline issues presented in Michalski's case that are implicated by the 2012 Commission's report. The "enhancements" the Commission viewed as out of touch with today's technology and collecting behavior apply in Michalski's case—prepubescent

8

minor (+2), images depicting sadomasochistic behavior (+4), and use of a computer (+2). These, in the aggregate, result in a net increase of 8 levels.

On the other side of the ledger, the number of images in this case is on the low-end (1,400) that this Court regularly sees and this fact is counter-balanced by the presence of videos with durations longer than five minutes. Finally, Grant Michalski's file structure and collection behavior did not target a specific type of image or sexual behavior.

Considering the competing factual and guideline issues Michalski's case presents, the parties agreed to resolve his case with a stipulated sentencing range of 90 to 132 months imprisonment. A sentence at the low-end of this range would be sufficient, but not greater than necessary, to satisfy Congress' sentencing mandate.

### D. A SENTENCE OF 90 MONTHS AVOIDS UNWARRANTED SENTENCING DISPARITES.

In the Sentencing Commission's most recent publication on the child pornography guidelines, Mandatory Minimum Penalties for Federal Sex Offenses, https://www.ussc.gov/research/research-reports/mandatory-minimum-penalties-federal-sex-offenses, (last visited on January 24, 2019) it noted that, on average, individuals convicted of receipt of child pornography offenses, like Michalski, were sentenced to serve 93 months in the BOP. *Id*. at 44. In contrast, inmates serving sentences for possession offenses served, on average, 55 months in prison. *Id*. at 46. This disparity was difficult for the Commission to reconcile as it concluded "there was little difference in the offense seriousness between typical receipt cases, which require a five-year mandatory minimum penalty, and typical possession cases, which require none." *Id*. at 46 & 56.

For eight years the Commission has been concerned with "unwarranted sentencing disparities resulting from inconsistent application of the mandatory minimum penalty for receipt

9

offenses and recommended that Congress align the statutory penalties for receipt and possession." *Id*. at 56. However, like the Commission's invitation to Congress to revise and revisit the guidelines, Congress has been equally disinterested in aligning the penalties that apply for receipt and possession offenses.

Because the average guideline sentence for receipt offenses is 38 months longer than possession offenses and the Sentencing Commission struggles to find an appreciable difference in the offense seriousness between those two classes of cases, a sentence of 90 months in this case would avoid unwarranted sentencing disparities.

### E. A SENTENCE OF 90 MONTHS IMPRISONMENT PROVIDES JUST PUNISHMENT AND DOES NOT DIMINISH THE SERIOUSNESS OF MICHALSKI'S OFFENSE -- §3553(a)(2)(A).

If this Court imposed a sentence at the low-end of the agreed upon sentencing range, the seriousness of this offense would not be diminished and both Michalski and others would be deterred from repeating his tragic mistakes. It's important to note that if this Court imposes a 90 month sentence, Michalski would serve a little more than 78 months (2,385 days) in prison, assuming he earns all the good-time credit to which he would be entitled.

As part of the First Step Act of 2018 enacted on December 21, 2018, most inmates who complete "evidence-based recidivism reduction programming or productive activities" will be: awarded preferential housing assignments (18 U.S.C. § 3632(c)); given longer phone and visitation privileges (18 U.S.C. § 3632(d)); transferred to institutions closer to home (18 U.S.C. § 3632(c)(2)); have a more robust ability to spend commissary money (18 U.S.C. § 3632(c)(3)(A)); have increased access to the CORRLINKS email system (18 U.S.C. § 3632(c)(3)(B)); and earn additional time reductions (18 U.S.C. § 3632(d)(4)(i) & (ii)).

However, inmates serving sentences for child exploitation offenses, like Michalski, have been tarred as "ineligible prisoners," making these reductions unavailable. 18 U.S.C. § 3632(C)(d)(4)(A)(xxxix). Therefore, even though inmates serving a child exploitation offense sentence could greatly benefit from participating in "evidence-based recidivism reduction programming or productive activities," he'll be given no incentive to participate in these programs, assuming they will even be afforded to "ineligible prisoners." Therefore, Grant Michalski's imprisonment will be different, in kind, from other BOP prisoners.

V.   CONCLUSION.

In light of the nature and circumstances of this offense, Grant Michalski's history and characteristics, the sentencing range established by the guidelines, and the need to avoid sentencing disparities, he submits that a sentence of 90 months incarceration and 60 months of supervised release is sufficient, but not greater than necessary, to punish him for his offense, and to protect the public.

Respectfully submitted,

  /s/   Steven S. Nolder_____
Steven S. Nolder (0037795)
Scott and Nolder Law Firm
65 E. State St., Ste. 200
Columbus, Ohio 43215-3469
(614) 221-9790
snolder9@gmail.com
Attorney for Grant Michalski

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the Sentencing Memorandum was electronically served upon AUSA Heather Hill on this 8th day of April, 2019.

  /s/  Steven S. Nolder\_\_\_\_\_
Steven S. Nolder  (0037795)
Attorney for Grant Michalski